BEA, Circuit Judge,
dissenting in part:
Although I agree with most of the majority opinion, I respectfully dissent from the conclusion reached in Part II.E that the category four sub-claims in the Second Amended Complaint (“SAC”), which challenge the approval of pesticide products by the Environmental Protection Agency (“EPA”), were not a collateral attack on the EPA’s prior approval of the pesticides in those products. The majority focuses on the distinct processes the EPA uses to approve pesticides and to approve pesticide products. However, the category four sub-claims, as pleaded, are an impermissible collateral attack because those sub-claims challenge the EPA’s approval of products simply because those products contain the pesticides the SAC alleges were improperly approved previously.
Whenever the EPA considers taking an “agency action,” the Endangered Species Act (“ESA”) Section 7 requires the EPA to consult with the National Marine Fisheries Service and the Fish and Wildlife Service (collectively, “the Service”) if that action “may affect” a listed endangered species or its habitat. See Karuk Tribe of California v. U.S. Forest Service, 681 F.3d 1006, 1020 (9th Cir. 2012) (citing 16 U.S.C. § 1536(a)(2) and 50 C.F.R. § 402.14(a)). In the SAC, the Center for Biological Diversity and the Pesticide Action Network North America (collectively, “CBD”), challenge the EPA’s reregistration eligibility determinations (“REDs”) for many different pesticides, alleging that the EPA failed to consult with the Service before issuing the REDs. According to CBD, approving the pesticides through the REDs “may affect” various listed endangered species or their habitats.
CBD structured the SAC around each challenged pesticide. Each Claim for Relief has four sub-claims. The category one sub-claim is the challenge to the RED. The category two and category three sub-claims challenge the EPA’s “continued discretionary control and involvement” in the pesticide’s registration and the EPA’s “completion of product reregistration” for the pesticide in question. I agree with the majority that the district court properly dismissed most of the category one sub-claims as time barred or jurisdietionally barred and that the category two and three sub-claims were properly dismissed because they did not challenge affirmative agency actions.
The final part of each Claim for Relief, the category four sub-claim, challenges the EPA’s approval of products containing the particular pesticide in question. As one of the category four sub-claims states: “[T]he following specific EPA actions on 1,3 dichloropropene are subject to this complaint and require EPA to consult under Section 7(a)(2) of the ESA, 16 U.S.C. 1536(a)(2): ... EPA’s approvals of prod- *1095 uets containing this pesticide, which are listed with dates in the table at Paragraph 120.” Notably, Paragraph 120 references all products in the EPA’s online Pesticide Product Label System that contain 1,3-dichloropropene. Thus, the category four sub-claims challenge the EPA’s approval of all products that contain a particular pesticide.
The SAC refers to these pesticide product approvals as one of four “actions involving” a particular pesticide. The SAC states that because all of the four actions “may affect the listed species in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.” Unsurprisingly, Exhibit A lists endangered species “that may be affected” by a particular pesticide, not endangered species that “may be. affected” by particular pesticide products. Thus, the SAC does not differentiate between the four challenged “actions.” According to the SAC, all of those actions “may affect” endangered species or their habitats because all of those actions involve a particular pesticide that may affect endangered species or their habitats. Therefore, the SAC does not specifically allege that the EPA’s approval of particular pesticide products “may affect” endangered species or their habitats for any reason other than the fact that those products contain pesticides approved in the REDs.
I agree with the majority opinion that the EPA’s approval of pesticide products is an affirmative agency action because that decision involves gathering and considering product-specific data. However, the majority incorrectly reverses the district court’s dismissal of these sub-claims by concluding that “[t]he collateral attack doctrine is simply not at issue here” because the EPA’s processes for approving pesticides and then later approving pesticide products are distinct. However, these category four sub-claims were a collateral attack on the REDs based on how these sub-claims were actually pleaded in the SAC. Therefore, I would affirm the district court’s dismissal.
The collateral attack doctrine prevents district courts from hearing claims that are “inescapably intertwined with a review of the procedures and merits” of an underlying agency order. Americopters, LLC v. F.A.A., 441 F.3d 726, 736 (9th Cir. 2006). This doctrine prevents litigants from relit-igating the merits of previous administrative procedures or evading those procedures. Id.
The category four sub-claims challenge the EPA’s approval of all products that contain specific pesticides approved in the REDs based on the theory that those very pesticides “may affect” endangered species or their habitats. Had the CBD alleged anything specific why the products qua products “may affect” endangered species, then the category four sub-claims would not be a collateral attack on the REDs. But since CBD’s challenge to the product approvals is based entirely on CBD’s allegation that the pesticides approved in the REDs “may affect” endangered species or their habitats, the category four sub-claims are an impermissible collateral attack on the REDs.
The district court carefully analyzed whether these sub-claims as pleaded were an improper collateral attack on the REDs. Ctr. for Biological Diversity v. EPA, 65 F.Supp.3d 742, 760-64 (N.D. Cal. 2014). The district court noted, “What is clear is what cannot be challenged: analy-ses and conclusions made in the RED. What is being challenged here is less clear.” Id. at 764. The district court noted that the SAC “does not identity any facts that demonstrate the product reregistra-tions raised any new issues regarding the EPA’s compliance with section 7 of the ESA that could not have been raised in a *1096 timely challenge to the EPA’s issuance of a RED.” Id. at 763. To cure this problem, the district court gave CBD leave to amend the SAC, id. at 764, which CBD declined to do.
Although CBD states in its Opening Brief that “[p]roduct formulations often contain more than one active ingredient that together cause synergistic harm,” the SAC does not allege that particular pesticide products contain specific combinations of ingredients that cause harm to listed endangered species or their habitats. There are no allegations that the approved pesticides cause harm when they interact with other specific ingredients in particular products.[1] Thus, the category four sub-claims as -pleaded challenge the EPA’s approval of pesticide products simply because the pesticides in those products “may affect” endangered species. CBD is not entitled to a second opportunity to challenge the EPA’s approval of the pesticides just because the EPA later approves products that contain those pesticides.
The majority misses the mark by focusing on the fact that the reregistration of a pesticide product and the issuance of a RED are distinct processes. As the majority states, “[T]he EPA does not ‘rubber stamp’ the pesticide product reregistration in light of the RED.” Maj. Op. 1093. Although this observation is true because a pesticide product reregistration decision involves the consideration of data not involved in the RED and is a distinct determination, “[t]he relevant inquiry is not what the statute directs, but what the plaintiff challenges.” Grand Canyon Trust v. Bureau of Reclamation, 691 F.3d 1008, 1021 (9th Cir. 2012). As the EPA states in its brief, “The EPA does not dispute that a challenge to a product registration could raise new issues that would not be foreclosed by the collateral attack doctrine. Here, however, the Center’s failure to initiate claims do not raise any such issues.” For example, CBD does not allege that the pesticide product reregistrations raised new ESA compliance issues that could not have been raised in a challenge to the REDs. CBD’s category four sub-claims are inescapably intertwined with CBD’s challenge to the REDs because those sub-claims challenge the EPA’s approval of pesticide products on the ground that those products contain the pesticide at issue in each Claim for Relief.
The district court realized that allowing CBD to challenge every product approval simply because those products contain a particular pesticide would undermine the Federal Insecticide, Fungicide, and Roden-ticide Act (“FIFRA”). As the majority correctly concludes, when the EPA issues a RED after notice-and-comment procedures, FIFRA requires a plaintiff seeking to challenge that RED to file a petition for review in the courts of appeals. Maj. Op. 1089. However, as the district court stated, “If an aggrieved party could challenge the conclusions of the RED [in a lawsuit filed in district court] just because they were implemented in a subsequent order, as a practical matter there would be no exclusive jurisdiction in the court of appeals to consider challenges to the RED.” Ctr. for Biological Diversity, 66 F.Supp.3d at 764. Since CBD’s claims challenging the product approvals were based entirely on the conclusions of the REDs, those claims were an improper attempt to evade FI-FRA’s requirement that CBD challenge those REDs through a petition filed in the court of appeals.
*1097 The category four sub-claims fail to allege anything particular about the products approved that required the EPA to consult with the Service. Instead, the category four sub-claims attempt to relitigate the EPA’s prior approval of pesticides because the EPA later approved products that contain those pesticides. I would deny CBD’s attempt to get a second chance to challenge the pesticide approvals by affirming the district court’s dismissal of the category four sub-claims.

. The SAC does state that "[t]he ecological risk assessment [for the REDs] generally does not consider the cumulative or synergistic effects posed by multiple pesticides on wildlife or the environment....” But this allegation is a general critique of the EPA’s process for issuing REDs, not a challenge to the unique risks posed by particular products.